**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

                v.

$1,707,937.91 IN FUNDS SEIZED FROM
ATLANTIC CAPITAL BANK ACCOUNT
NUMBER XXXXXX2583, HELD IN THE
NAME OF CONCENTRIC HEALTH
ALLIANCE LLC,

    Defendant.

Civil Action No.
1:20-cv-03194-SDG

## OPINION AND ORDER

Plaintiff, the United States of America, pursuant to 18 U.S.C. §§ 981(a)(1)(A)

and (C), filed this forfeiture action *in rem* against $1,707,937.91 in funds seized from

Atlantic Capital Bank, account number ending in 2583 (ACB 2583). Concentric

Health Alliance, LLC (Concentric), who claims the seized funds, has moved to

dismiss the action and for the return of the seized funds [ECF 18]. After careful

consideration of the parties' briefing,[1] and with the benefit of oral argument, the

Court **DENIES** Concentric's motion.

---

[1]    ECF 23 (United States' response in opposition); ECF 25 (Concentric's reply in
    support).

## I.     BACKGROUND

Though civil forfeiture complaints are governed by the modified pleading standards of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions (the Supplemental Rules), on a claimant's motion to dismiss, consistent with the standard of review under Federal Rule of Civil Procedure 12(b)(6), all well-pleaded facts are accepted at true. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999). The Court therefore accepts the following facts as true for purposes of this motion.

Concentric, operating through Amy Holcomb, entered into three contracts with Stericraft, LLC (Stericraft) for the sale of personal protective face masks.[2] Through the first two contracts, Stericraft ordered a total of 160,000 masks for $134,200.[3] Concentric delivered 110,000 masks to Stericraft and issued an $80,000 refund for the 50,000 masks it failed to deliver.[4] Through the third contract, Stericraft ordered 1 million SQ100SB CE/FDA-certified Niosh-rated N95 Respirator Masks (the N95 masks) at $3.10 a piece for a total purchase price of

---

[2]     ECF 1, ¶¶ 12, 19, 21–23.

[3]     *Id.* ¶ 21.

[4]     *Id.* ¶ 22.

$3,100,000.[5] These masks were to be shipped to the Bahrain Defense Force Hospital in Hidd Town, Manama, Bahrain.[6]

Before Stericraft ordered the N95 masks, Concentric, through Holcomb, informed Stericraft that there was a three-to-five day lead time on the masks if Stericraft paid in cash, but that the freight dates needed to be booked by April 27, 2020 for a May 1, 2020 pickup date to avoid delays.[7] On or about April 21, 2020, Stericraft instructed Concentric to "lock in" the 1 million N95 masks and to inform Stericraft of the brand of masks so it could send a purchase order.[8] Concentric informed Stericraft that it would start production lead time and confirm shipping once Stericraft sent payment and the purchase order.[9] On or about April 22, 2020, Stericraft sent a purchase order to Holcomb and wired $3,100,000 to Concentric's bank account, ACB 2583.

Following the purchase of the N95 masks, Concentric repeatedly assured Stericraft that the shipments were on track—with 100,000 N95 masks to be shipped in April 2020 and the remaining 900,000 to be shipped by May 10, 2020—but failed

---

[5]   *Id.* ¶ 23–24.

[6]   *Id.* ¶ 25.

[7]   *Id.* ¶¶ 26–27.

[8]   *Id.* ¶¶ 28–29.

[9]   *Id.* ¶¶ 34-35.

to provide Stericraft with any tracking information.[10] Ultimately, Concentric informed Stericraft that there was a timing issue with UPS and that the manufacturer of the masks, Sanqi, had offered a refund.[11] Stericraft asked Concentric to begin the refund process on May 11, 2020.[12]

Starting on May 13, 2020, and continuing until the funds were seized from ACB 2583, Holcomb provided inconsistent accounts of the refund process to Stericraft, including:

- o That Concentric was being refunded by the Chinese supplier around May 13, 2020, and so Concentric would be able to refund Stericraft the following Monday, May 18, 2020;[13]

- o That the money was supposed to be returned to the Chinese entity from Sanqi on Monday, May 18, 2020, "[t]hen it needs to transfer to the USA then to [Stericraft]";[14]

---

[10]   *Id.* ¶¶ 44–47.

[11]   *Id.* ¶¶ 48–50.

[12]   *Id.* ¶ 51.

[13]   *Id.* ¶¶ 60–61.

[14]   *Id.* ¶¶ 61, 66–67.

o  That the money was supposed to "hit [Concentric's] Chinese account" on Monday or Tuesday, May 18 or 19, because that is when the contract came to full term;[15]

o  After being pressed by Stericraft on Tuesday, May 19, 2020, that Concentric was "getting an update,"[16] and that it would update Stericraft the following day, May 20, 2020;[17]

o  That the "payment of 3 hit" Concentric's China account on Tuesday, May 19, 2020, and that the first part of the transfer would occur on May 21, 2020;[18]

o  That the May 20, 2020 transfer was actually the $80,000 refund for the previous mask orders;[19]

o  That Concentric would be refunded the following Monday (May 25), but Stericraft would not be refunded at that time because Stericraft

---

[15]  *Id.* ¶ 68.

[16]  *Id.* ¶¶ 79–85.

[17]  *Id.* ¶ 89.

[18]  *Id.* ¶ 92.

[19]  *Id.* ¶ 95.

partner Kenneth Littlejohn requested a lump sum;[20] Kenneth

Littlejohn later confirmed that he never told Concentric this;[21] and,

o That the $3,100,000 had to be sent to Stericraft in separate amounts

because that is what Atlantic Capital Bank allowed and so Stericraft

would receive $1,000,000 on Friday June 5, 2020, and the rest later.

In addition to these inconsistent representations, Holcomb also ignored

Stericraft's requests to be carbon copied on any email between Concentric and the

Chinese supplier,[22] and—after Stericraft requested proof that the refund from the

Chinese supplier was in Concentric's account—provided Stericraft a heavily

redacted document purporting to show that Concentric was refunded $1,575,000,

but which actually showed the initial payment from Concentric to the supplier.[23]

During a phone conversation between Holcomb and Stericraft, Holcomb

represented that Concentric made multiple payments to its Chinese supplier for

the masks and that it had been able to fill contracts with the Department of

Homeland Security with no issues,[24] but both of these statements are alleged to be

---

[20]   *Id.* ¶ 98.

[21]   *Id.* ¶103.

[22]   *Id.* ¶¶ 86, 90, 101.

[23]   *Id.* ¶¶ 104–07.

[24]   *Id.* ¶¶ 124, 137–39.

false based on Concentric's bank records.[25] Concentric ultimately wired Stericraft $180,000 consisting of the $80,000 refund for the previous mask orders and the $100,000 Concentric claimed it made in profit from the N95 mask order.[26] On or about June 5, 2020, the FBI obtained a seizure warrant and seized the funds at issue.[27]

## II.   LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "A complaint does not state a facially plausible claim for relief if it shows only a sheer possibility that the defendant acted unlawfully." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 F. App'x 318, 322 (11th Cir. 2009).

---

[25]   *Id.* ¶¶ 125, 140–41.

[26]   *Id.* ¶ 145.

[27]   *Id.* ¶¶ 152–53.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The pleading standards for forfeiture actions *in rem*, as set forth by the Supplemental Rules and the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983, are more exacting than the standard under Rule 8 of the Federal Rules of Civil Procedure. Pursuant to the Supplemental Rules, a forfeiture complaint must, among other things, "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). "At trial of a forfeiture action, the Government must prove by a preponderance of the evidence that the property is subject to forfeiture." *United States v. $255,427.15 in U.S. Currency*, 841 F. Supp. 2d 1343, 1346 (S.D. Ga. 2012) (citing 18 U.S.C. § 983(c)(1)). The complaint, therefore, "must allege sufficient facts that create a reasonable belief that the property in question is in fact subject to forfeiture." *United States v. $144,210.77 in Funds Seized from SunTrust Bank Acct. XXX-XX-XXXX*, 63 F. Supp. 3d 1387, 1389 (N.D. Ga. 2014).

"At the pleading stage, it suffices for the government to simply allege enough facts so that the claimant may understand the theory of forfeiture, file a responsive pleading, and undertake an adequate investigation." *United States v.*

*One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013) (internal citations omitted). The Court may not dismiss the complaint "on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." Supp. R. G(8)(b)(ii); 18 U.S.C. § 983(a)(3)(D).

As noted, at the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp.*, 658 F.3d at 1296 (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678. *See also $134,972.34 Seized from FNB Bank*, 94 F. Supp. 3d at 1230 ("[T]he requirement that a court ruling on a Rule 12(b)(6) motion to dismiss must disregard conclusory allegations in determining the sufficiency of a complaint does not conflict with Supplemental Rule G(2).").

## III.   DISCUSSION

Concentric moves to dismiss the Government's Complaint as failing to meet the specificity requirements of Supplemental Rule G(2)(f) because the pleading is based entirely on conclusory statements and fails to state with sufficient detail why

the seized funds are subject to forfeiture.[28] Specifically, Concentric contends that

the Government is wrongfully interfering in a private business dispute, has failed

to allege an intent to defraud, and has failed to trace the seized funds to the alleged

illegal conduct. The Court addresses Concentric's arguments in two parts.

> **a.     The Government Has Sufficiently Alleged Facts Showing an
> Unlawful Scheme and an Intent to Defraud.**

The Government claims that Holcomb, operating through Concentric,

engaged in wire fraud by executing a scheme to defraud Stericraft using interstate

wires in violation of 18 U.S.C. § 1343; used funds from this unlawful activity in

transactions designed to conceal the nature, location, source, ownership, or control

of the proceeds of the unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(B)(i);

and engaged in monetary transactions with the proceeds, valued at more than

$10,000, within the United States, in violation of 18 U.S.C. § 1957. This alleged

conduct subjects any property involved to forfeiture under 18 U.S.C

§§ 981(a)(1)(A) and 1956(c)(7).

In consideration of these statutes, the Court must determine whether the

conduct alleged in the Complaint, as summarized above, "create[s] a reasonable

belief that the property in question is in fact subject to forfeiture," *$144,210.77 in*

---

[28]   ECF 18, at 2.

*Funds*, 63 F. Supp. 3d at 1389, and provides sufficient detail so "the claimant may understand the theory of forfeiture, file a responsive pleading, and undertake an adequate investigation." *One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 14. The Court finds that it does.

The allegations in the Complaint, taken in the light most favorable to the Government, show that Stericraft wired Concentric $3.1 million dollars for the N95 masks under the assumption that the masks would be shipped by May 10, 2020, and that Holcomb then continuously misrepresented the status of the order. After Stericraft requested the refund, for example, Holcomb repeatedly pushed back the refund date, each time presenting a new excuse that contradicted an earlier representation.[29] Holcomb also evaded Stericraft's inquiries and requests to be involved in Concentric's conversations with the Chinese supplier,[30] misrepresented a document purporting to show funds in the ACB 2583 account, lied about a Stericraft partner requesting a lump sum refund,[31] and lied about the legitimacy of Concentric's business.[32]

---

[29]   ECF 1, ¶¶ 51–132.

[30]   *Id.* ¶¶ 86, 90.

[31]   *Id.* ¶¶101–03.

[32]   *Id.* ¶¶ 124–25, 137–41.

The line between misguided or improper business dealings and fraud is crossed when misrepresentations are accompanied by an intent to defraud. The Government's Complaint does not explicitly identify which of Holcomb's representations regarding the status of delivery or refund were made with the intent to defraud, or even that Holcomb acted with the intent not to deliver the masks or the refund to Stericraft. The Court is therefore left to infer Holcomb's intent from the factual allegations in the Complaint. Given the leniency the Complaint is afforded at this stage, the Court finds that the allegations in the Complaint, taken as true, are enough for the Court to infer an intent to defraud.

The Court finds, in particular, that the allegation that Holcomb misrepresented a transaction on the ACB 2583 bank account statement as proof that the Chinese supplier had transferred money to Concentric, when it in fact showed the initial amount transferred to the supplier, taken together with Holcomb's repeated contradictions and delays, is sufficient to evidence an intent to defraud and save the Government's Complaint from dismissal. Importantly, as both parties acknowledged during oral argument, whether the Government can present evidence to carry its burden beyond this pleading stage is not before the Court. The Court is prohibited from dismissing the Government's Complaint "on the ground that the government did not have adequate evidence at the time the

complaint was filed to establish the forfeitability of the property," Supp. R. G(8)(b)(ii); 18 U.S.C. § 983(a)(3)(D), however doubtful the existence of such evidence may be.

The Court finds that the Complaint supports a reasonable belief that the Government can meet its burden at trial. Further, the allegations are clearly sufficient to give Concentric notice of the facts that form the basis for forfeiture, allowing it to conduct an investigation into and respond to the Complaint. In fact, it has already been able to formulate and present its own version of the underlying events.[33]

> **b.      The Seized Funds Are Sufficiently Connected to the Alleged Illegal Activity.**

Concentric also argues that the Government has failed to show how the seized funds are connected to or involved in the alleged unlawful activity, as required by 18 U.S.C § 981(a)(1), because the ACB 2583 account held funds from entirely separate transactions. Though "[t]he mere pooling or commingling of tainted and untainted funds in an account does not, without more, render the entire contents of the account subject to forfeiture . . . . Forfeiture of commingled funds [ ] is proper when the government demonstrates that the defendant pooled

---

[33]    ECF 18, at 3–6.

the funds to facilitate or 'disguise' his illegal scheme." *United States v. Puche*, 350 F.3d 1137, 1153 (11th Cir. 2003) (internal citations omitted). Here, the allegations in the Complaint show that Concentric, through Holcomb, used the ACB 2583 account to falsely demonstrate to Stericraft that Concentric was receiving the money from the Chinese supplier and conducting legitimate business. Taking the Government's allegations as true, this sufficiently pleads that the entire account was used, at the very least, to disguise the illegal scheme.

Further, § 981 "allows for the civil forfeiture of property, including funds deposited in an account in a financial institution, with a physical and temporal nexus to the tainted property." *$134,972.34 Seized from FNB Bank*, 94 F. Supp. 3d at 1238. It is enough, then, that the subject funds were seized from the bank account from which Concentric was receiving and withdrawing money related to the illegal conduct and the funds were seized during the period that Concentric was engaged in the allegedly illegal conduct. *See id.* (temporal and physical nexuses were met where money was seized from the bank account from which the traceable cash was withdrawn). The Government has therefore sufficiently shown a connection between the seized funds and the alleged unlawful activity.

## IV.   CONCLUSION

Claimant Concentric's motion to dismiss and for the return of the seized funds is **DENIED**. Further, during oral argument, the Government represented its intent to move to stay this proceeding pending completion of the criminal investigation if the motion to dismiss was denied. The Government is therefore **ORDERED** to file a motion to stay, if any, by April 29, 2021. The motion shall request a stay for the specific time period needed to complete the criminal investigation or present formal charges. Concentric shall have seven days to respond to any motion to stay.

**SO ORDERED** this the 22nd day of April 2021.

Steven D. Grimberg
United States District Court Judge